1

2

3

4

5

6

7                              UNITED STATES DISTRICT COURT

8                       FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    THOMAS D. YOUNG,                              No.  2:12-cv-2673-KJM-EFB P

11                       Plaintiff,

12          v.                                      FINDINGS AND RECOMMENDATIONS

13    OFFICER SANDOVAL,

14                       Defendant.

15

16          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17    U.S.C. § 1983.  He claims that defendant Sandoval, a correctional officer, exercised excessive

18    force in violation of the Eighth Amendment when he shot plaintiff in the head with a 40 mm.

19    block gun.  Sandoval has filed a motion for summary judgment.  ECF No. 27.  Plaintiff filed an

20    opposition to defendant's motion, ECF No. 34, and Sandoval filed a reply to plaintiff's

21    opposition, ECF No. 36.  For the reasons that follow, Sandoval's motion for summary judgment

22    must be denied.

23    **I.       BACKGROUND**[1]

24          In May 2011, plaintiff was incarcerated at California State Prison-Sacramento, where he

25    was the Nation of Islam Clerk in the B-Facility chapel.  Compl. at 4.[2]  When he asked Sandoval, a

26    _____

27          [1]  This action proceeds on plaintiff's verified complaint, filed October 29, 2012.  ECF No.
      1 ("Compl.").

28          [2]  For ease of reference, all citations to court documents are to the pagination assigned via
      the court's electronic filing system.

                                            1

1    correctional officer at the prison, about "a pattern of being released for work late," Sandoval

2    responded:  "Your Supervisor hasn't called!  Jeffries told me all about you [plaintiff]!  I'm not a

3    white woman, and I'm not Jeffries!  So go 602 that!  Now take it back to your cell!"  *Id.* at 5; *see*

4    *also* ECF No. 28, Plaintiff's Deposition Transcript ("Pl.'s Dep.") at 43:11 (describing this

5    exchange as "a brief verbal altercation").

6         As he was released for work on the morning of May 20, 2011, plaintiff heard an order to

7    get down onto the ground.  Compl. at 6.  He complied with that order by sitting down on the

8    ground, and he complied with a second order to "prone out" by lying down on his stomach with

9    his hands facing out.  *Id.*; ECF No. 34 at 2.  Plaintiff then saw a large group of white inmates,

10   over 100 yards away, leap to their feet and run towards plaintiff and other black inmates that were

11   on the ground.  Compl. at 6.  Plaintiff asserts that these white inmates did not obey orders to get

12   down and advanced right past Sandoval, who was in his tower position just five yards away but

13   did not fire any warning shots or deterrents of any kind.  *Id.*  According to plaintiff, Sandoval then

14   watched as the white inmates attacked plaintiff and other black inmates that were on the ground.

15   *Id.*

16        Plaintiff got up from the ground to defend the attackers' kicks, punches, and attempts to

17   stab plaintiff.  ECF No. 34 at 2.  He moved directly under the tower that Sandoval was in, hoping

18   Sandoval would help.  Compl. at 7.  "Instead of assistance, [] Sandoval shot the plaintiff directly

19   in the top of the head with the 40 MM Block Gun."  *Id.*  The attacking white inmates were forced

20   back past building 5.  *Id.*  "The plaintiff now no longer under attack and bleeding badly from the

21   head, laid out on the ground."  *Id.*  He was "only a few feet away" from Sandoval's gun position

22   and was away from the commotion when Sandoval maliciously and sadistically shot him again,

23   this time in the back of the head.  *Id.*  The incident left plaintiff with "over 20 stitches, severe

24   head tr[a]uma, and . . . Post-Concussion Syndrome."  *Id.* at 9.

25   **II.    STANDARD**

26        Summary judgment is appropriate when there is "no genuine dispute as to any material

27   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

28   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

1   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

2   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

3   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

4   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

5   motion asks whether the evidence presents a sufficient disagreement to require submission to a

6   jury.

7       The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

8   or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

9   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

10  trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

11  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

12  under summary judgment practice, the moving party bears the initial responsibility of presenting

13  the basis for its motion and identifying those portions of the record, together with affidavits, if

14  any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

15  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

16  party meets its burden with a properly supported motion, the burden then shifts to the opposing

17  party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

18  *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

19      A clear focus on where the burden of proof lies as to the factual issue in question is crucial

20  to summary judgment procedures.  Depending on which party bears that burden, the party seeking

21  summary judgment does not necessarily need to submit any evidence of its own.  When the

22  opposing party would have the burden of proof on a dispositive issue at trial, the moving party

23  need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*

24  *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

25  which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

26  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

27  summary judgment motion may properly be made in reliance solely on the 'pleadings,

28  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

1   should be entered, after adequate time for discovery and upon motion, against a party who fails to

2   make a showing sufficient to establish the existence of an element essential to that party's case,

3   and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

4   circumstance, summary judgment must be granted, "so long as whatever is before the district

5   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

6   satisfied." *Id.* at 323.

7        To defeat summary judgment the opposing party must establish a genuine dispute as to a

8   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

9   is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

10   248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

11   will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

12   determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

13   is unable to produce evidence sufficient to establish a required element of its claim that party fails

14   in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

15   of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

16   at 322.

17        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

18   the court must again focus on which party bears the burden of proof on the factual issue in

19   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

20   the factual issue in dispute, that party must produce evidence sufficient to support its factual

21   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

22   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

23   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

24   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

25   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

26   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

27   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

28   /////

1    The court does not determine witness credibility.  It believes the opposing party's

2    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

3    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

4    proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

5    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

6    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

7    issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

8    Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is

9    some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

10   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

11   trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

12   summary judgment.

13   **III.   ANALYSIS**

14       As the moving party, Sandoval bears the initial responsibility of presenting the basis for

15   his motion and identifying those portions of the record, together with affidavits, if any, that he

16   believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

17   Sandoval argues that the court should grant summary judgment in his favor because:  (1) there is

18   "no admissible evidence indicating" that he shot the rounds that injured plaintiff, that he was

19   aiming at plaintiff, or that he shot maliciously, sadistically, or with intent to injure plaintiff, ECF

20   No. 27-1 at 1; (2) plaintiff cannot prove that Sandoval fired the shots that struck plaintiff, *id.* at 4;

21   (3) "[a]lthough Sandoval admits discharging his 40 mm. block gun, Sandoval did so only in a

22   good faith effort to restore order," *id.* at 5, 7; (4) plaintiff's claim "is tantamount to a claim of

23   negligence," *id.* at 6; and (5) Sandoval is entitled to qualified immunity, *id.* at 6-7.  Sandoval's

24   motion is based on statements from his declaration, plaintiff's complaint, and plaintiff's

25   deposition.  *See* ECF No. 27-2.

26       Sandoval explains that he was stationed in the B-5 Tower overlooking the exercise yard at

27   B facility on May 20, 2011.  ECF No. 27-3, Exhibit C ("Sandoval's Decl.") at ¶ 2.  That morning

28   he observed a group of black inmates and white inmates charge at and fight each other.  *Id.* at

¶ 3. Sandoval yelled at them to get down and stop fighting—an order that the inmates did not comply with—before firing rounds made of foam from his block gun. *Id.* at ¶¶ 3, 4. He fired a total of ten rounds from his block gun during the incident. *Id.* at ¶ 7. Before firing each round, he ordered the inmates to stop fighting and to get on the ground. *Id.* Sandoval states that he aimed each round at the inmates' lower legs. *Id.* He further states that he was not aiming at plaintiff, and he did not know that plaintiff was involved in the incident. *Id.* Rather, his sole purpose in firing the block gun was to gain the inmates' compliance with the orders to get down and stop fighting. He adds that he did not fire his gun maliciously or sadistically for the purpose of causing harm to anyone, including plaintiff. *Id.* at ¶¶ 8, 9. Prior to the incident, Sandoval had received training in the use of force policy instituted by CDCR. *Id.* at ¶ 10.

Plaintiff's opposition to Sandoval's motion identifies the specific parts of Sandoval's account that he disputes. *See* ECF No. 34. According to plaintiff, Sandoval knew that plaintiff was involved in the incident, as Sandoval was familiar with plaintiff from having dealt with him on a daily basis, and saw the white inmates approaching to attack plaintiff. *Id.* at 6. Moreover, plaintiff contends that Sandoval was in close proximity to plaintiff (ten to fifteen feet) and aiming directly at his head. *Id.* at 3, 4. Plaintiff further contends that "[t]here were no inmates fighting or movement around where the Plaintiff layed bleeding from the head, when the Defendant fired and shot the Plaintiff, unjustifiably, the second time, in the head." *Id.* at 7. From their conflicting accounts of what occurred, it is clear that the parties dispute: (1) whether Sandoval knew that plaintiff was involved in the incident; (2) whether Sandoval was aiming at the inmates' lower legs or directly at plaintiff's head; and (3) whether there were inmates still fighting near plaintiff when he was shot the second time. These factual disputes are both genuine and material.

Assessing materiality requires review of the substantive law applicable to plaintiff's claim. *Anderson*, 477 U.S. at 248. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

/////

6

1    While malicious and sadistic uses of force always violate contemporary standards of decency, not

2    every "malevolent touch" by a prison guard is actionable as an Eighth Amendment violation. *Id.*

3    at 9. "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily

4    excludes from constitutional recognition de minimis uses of physical force, provided that the use

5    of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation

6    marks and citations omitted). What violates the Eighth Amendment is "the unnecessary and

7    wanton infliction of pain," i.e., infliction of suffering that is "totally without penological

8    justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

9         Here the factual disputes are outcome-determinative. According to Sandoval, he was

10   aiming at the legs of the inmates that disregarded his orders and continued to fight, and he did not

11   even know that plaintiff was involved in the incident. But plaintiff claims that Sandoval not only

12   knew of plaintiff's involvement, but he twice aimed directly at and shot plaintiff in the head.

13   Plaintiff also claims that no inmates were fighting or even moving around him as he laid on the

14   ground when Sandoval aimed at and shot him in the head the second time. While Sandoval

15   describes a good-faith effort to restore discipline, plaintiff's allegations portray the shooting as

16   malicious, sadistic, and without penological justification. Because the factual disputes make a

17   difference in the outcome of the case, they are material.

18        The factual disputes are also genuine, as plaintiff has produced evidence sufficient to

19   support his claims. Both plaintiff and Sandoval are percipient witnesses to the event and they

20   each describe a very different account of what occurred. The outcome of the case will turn on a

21   credibility determination as to whose version should be credited. If a jury credits plaintiff's

22   testimony, if could reasonably render a verdict in his favor on the claims asserted. Plaintiff first

23   asserted his factual allegations in his verified complaint,[3] and he provided elaboration in his

24   deposition and opposition to defendant's motion. His verified complaint may itself serve as a

25   declaration and it alone contains sufficient specificity in describing how Sandoval twice aimed at

26   _____

27        [3] The allegations of a verified complaint may serve as an affidavit for purposes of
     summary judgment if they are based on personal knowledge and set forth the requisite facts with
     specificity. *See Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir.

28   2010).

and shot him in the head, and how he laid only a few feet away from Sandoval "and away from the further commotion" when Sandoval shot him the second time.  Compl. at 7.  If plaintiff's testimony is credited by a jury, it could reasonably return a verdict for plaintiff.  Of course, a jury might instead credit Sandoval's version of what happened and conclude that plaintiff's testimony is not credible.  However, at the summary judgment stage, the court cannot weigh plaintiff's credibility and resolve genuine disputes over factual material issues.  Rather, the court must accept plaintiff's version of what occurred and must draw all reasonable inferences in his favor.  *Anderson*, 477 U.S. at 249, 255; *Matsushita*, 475 U.S. at 587.  If a reasonable jury could credit plaintiff's version over the defendant's version over material facts, summary judgment must be denied.  *Warren*, 58 F.3d at 441.

The various arguments that Sandoval advances in his motion do not require a different result.  Sandoval first argues that there is "no admissible evidence indicating" that he shot the rounds that hit plaintiff, that he was aiming at plaintiff when discharging his gun, or that he discharged his gun maliciously, sadistically, or with intent to injure plaintiff.  ECF No. 27-1 at 1.  Plaintiff testified to those facts in his deposition, and earlier attested to them in his verified complaint.  *See* Pl.'s Dep. at 69:8-9 ("I know that Officer Sandoval shot me twice in the head.");  Compl. at 7 ("Sandoval shot the plaintiff directly in the top of the head. . . . Sandoval took aim and . . . fired another 'Direct Hit' to the back of the plaintiff's head . . . .").  Sandoval does not provide any elaboration as to why the testimony of plaintiff, a percipient witness as to those alleged facts, would be inadmissible at trial.  Again, the allegations of a verified complaint may serve as an affidavit for purposes of summary judgment.  *See Brumsickle*, 624 F.3d at 1022.

Sandoval also argues that plaintiff "cannot prove that Sandoval fired the shots which injured him," and therefore plaintiff cannot prove Sandoval's personal participation in the alleged constitutional deprivation.  ECF No. 27-1 at 4.  In support of this argument, Sandoval contends that plaintiff (1) acknowledges there was more than one correctional officer firing a block gun during the incident, (2) initially believed that another officer fired the shots that caused his injuries, and (3) admits that he does not know who fired the first shot that hit him in the head.  *Id.* /////

8

1    Sandoval's argument requires the court to discredit all of plaintiff's plain statements to the

2    contrary in his complaint and deposition.  *See* Compl. at 7; Pl.'s Dep. at 69:8-9 ("I know that

3    Officer Sandoval shot me twice in the head").  While plaintiff acknowledges that there was more

4    than one correctional officer firing a block gun during the incident, and he concedes that he

5    initially thought that Officer Cook fired the shots that caused his injuries, *see* ECF No. 34 at 5, he

6    testified that he saw Sandoval in the Building 5 tower where an officer aimed at plaintiff and shot

7    him twice in the head.  Pl.'s Dep. at 61, 69.  When pressed on the matter of how he could

8    conclude where Sandoval was aiming, plaintiff insisted the shots came from the tower occupied

9    by Sandoval and that based on plaintiff's location, position and proximity to Sandoval it was

10   plaintiff's perception that the shots were aimed at him.  *Id.* at 68-69.  Plaintiff clarified the initial

11   confusion and how he was able to determine that it was Sandoval not Cook.  *Id* at 88 ("Cook was

12   not in that position in the 5 Building block immediately over the door."), *see also id.* at 88-89 ("I

13   found out that it wasn't Cook in that position from which the shots was fired, but that it was

14   Officer Sandoval that I found in my investigation.").  Thus, while Sandoval has shown that

15   plaintiff was initially mistaken has to who was in the Building 5 tower that was above plaintiff

16   (the tower from which the shots were fired), plaintiff has consistently asserted and testified that

17   the officer in that tower (later learned to be Sandoval) aimed in the direction of plaintiff and fired

18   two shots to his head.  *See, e.g.,* Pl.'s Dep. (ECF No. 28) at 69:8-9 ("I know that Officer Sandoval

19   shot me twice in the head").  Sandoval's claim that plaintiff does not know who fired the first shot

20   completely disregards all of plaintiff's plain statements to the contrary in his complaint[4] and

21   deposition.  *See* Compl. at 7; Pl.'s Dep. at 69:8-9.  At most, Sandoval presents arguments for

22   discrediting plaintiff's testimony, which is not the function of summary judgment.  That

23   Sandoval's attorney was able to get plaintiff to state that he did not know who fired the first shot

24   during his deposition (*see* Pl.'s Dep. at 94:25-95:5) may be relevant at trial, but it is for the trier

25   of fact to resolve credibility.  The court cannot ignore all of plaintiff's statements to the contrary

26   and grant Sandoval summary judgment.

27

28          [4]  Again, plaintiff's verified complaint is sufficient at the summary judgment stage.

9

1   Sandoval also argues that he fired his block gun only in a good faith effort to restore

2   order.  However, as explained above, plaintiff's evidence indicates that Sandoval twice aimed his

3   block gun directly at plaintiff's head, and that he twice shot him in the head.  Plaintiff's evidence

4   also indicates that when Sandoval shot him the second time, he was laying on the ground with no

5   one fighting or moving near him.  While Sandoval disputes plaintiff's account in that regard, the

6   conflict cannot be resolved on summary judgment.

7   Sandoval also argues that plaintiff's claim "is tantamount to a claim of negligence" and

8   thus not sufficient to establish an Eighth Amendment violation.  ECF No. 27-1 at 6.  He

9   predicates this argument on the assertion that plaintiff acknowledges that Sandoval was not

10   aiming at plaintiff when Sandoval fired his block gun.  The premise is false.  Plaintiff's account

11   of what occurred, as stated in his verified complaint, his deposition, and opposition to defendant's

12   motion, has consistently maintained that Sandoval was directly aiming at plaintiff's head.

13   Accordingly, Sandoval's argument does not warrant summary judgment in his favor.

14   Lastly, Sandoval argues that summary judgment is appropriate because he is entitled to

15   qualified immunity.  ECF No. 27-1 at 6-7.  Qualified immunity protects government officials

16   from liability for civil damages where a reasonable person would not have known that their

17   conduct violated a clearly established right.  *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).

18   "In resolving questions of qualified immunity at summary judgment, courts engage in a two-

19   pronged inquiry."  *Tolan v. Cotton*, ___ U.S. ___, ___, 134 S. Ct. 1861, 1865 (2014) (per curiam).

20   "The first asks whether the facts, 'taken in the light most favorable to the party asserting the

21   injury, . . . show the officer's conduct violated a federal right.'"  *Id.* (internal bracketing omitted)

22   (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "The second prong of the qualified-

23   immunity analysis asks whether the right in question was 'clearly established' at the time of the

24   violation."  *Tolan*, 134 S. Ct. at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  A

25   plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently

26   clear that a reasonable official would understand that what he is doing violates that right."

27   *Anderson v. Creighton*, 483 U.S. at 640.  "The salient question is whether the state of the law at

28   /////

1    the time of an incident provided fair warning to the defendants that their alleged conduct was

2    unconstitutional." *Tolan*, 134 S. Ct. at 1866 (internal bracketing and quotation marks omitted).

3         Sandoval's qualified immunity argument rests on his disputed version of the incident and

4    his contention that there was no constitutional violation.  As discussed above, material facts are in

5    genuine dispute as to whether there was a constitutional violation.  Specifically, there is a dispute

6    as to whether Sandoval aimed directly at plaintiff's head before firing his block gun, and whether

7    there was any fighting or movement around plaintiff when he was shot the second time.  If there

8    was no constitutional violation, then of course there was no violation of a clearly established

9    constitutional right.  But the material factual disputes which preclude summary judgment on that

10   question also preclude summary judgment on Sandoval's assertion of qualified immunity here.

11   *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("The determination of

12   whether a reasonable officer could have believed his conduct was lawful is a determination of law

13   that can be decided on summary judgment only if the material facts are undisputed.").

14   **IV.    RECOMMENDATION**

15        Accordingly, it is hereby RECOMMENDED that the motion for summary judgment filed

16   by Sandoval on April 4, 2014 (ECF No. 27) be denied.

17        These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

22   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

23   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24   DATED:  January 5, 2015.

25

26                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

27

28